**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**GEORGE CARTER,**

    Petitioner,

v.                                      **CRIMINAL ACTION NO. 3:05CR68-5
CIVIL ACTION NO. 3:08CV147
(BAILEY)**

**UNITED STATES OF AMERICA,**

    Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

**I.**     Introduction

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge David J. Joel. By Standing Order Dated March 24, 2000, this action was referred to the magistrate judge for a proposed report and recommended disposition. Magistrate Judge Joel filed his R & R on July 13, 2009 [Crim. Doc. 585; Civ. Doc. 6]. In that filing, the magistrate judge recommended that this Court deny the petitioner's § 2255 petition.

Pursuant to 28 U.S.C. § 636 (b) (1) (c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. **Thomas v. Arn**, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1);

*Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Joel's R & R were due within ten days after being served with a copy, pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). This Court notes that the petitioner timely filed his Objections [Crim. Doc. 594] on August 17, 2009. Accordingly, this Court will review the portions of the R&R to which the petitioner objected *de novo*. The remaining portions will be reviewed for clear error.

II.  Factual and Procedural History

On May 9, 2006, petitioner signed a plea agreement in which he plead guilty to Count 6 of the Indictment, conspiracy to trade cocaine base to violate § 924(c), and was sentenced to fifty-seven (57) months imprisonment to be followed by three (3) years of supervised release. As a result of this guilty plea, Count 10 of the Indictment, Felon in Possession, against petitioner was dismissed.

Subsequent to the change of plea hearing, on July 12, 2006, after receiving a copy of his presentence investigation report and despite being represented by counsel, petitioner filed a *pro se* Motion to Withdraw Plea of Guilty, asking that his plea agreement be rejected but that he be permitted to maintain his plea of guilt. On July 20, 2006, the Court held a hearing to address petitioner's *pro se* motion, eventually determining that petitioner did not, in fact, wish to retract his plea agreement while maintaining his guilty plea, as it would expose him to a possible life sentence if Count 10 were not dismissed as provided in the plea agreement. Extensive argument was heard on the possibility of a four-level enhancement to petitioner's base offense status based on the AK-47 rifle at issue and

2

discussion was had on whether petitioner would be permitted to proceed *pro se* from that point on. Petitioner agreed to wait until the sentencing hearing to voice the additional objections he had to the report, outside of the objections his counsel planned to raise.

On July 24, 2006, a sentencing hearing was held and petitioner voiced his *pro se* objections concerning the presentencing report and the determination of his base offense level status. The Court ruled against petitioner's objections. The application of 2K2.1(b)(5) to petitioner's base offense level status objection was again addressed. Extensive argument by counsel was interrupted to be taken up again in a continued sentencing hearing on July 26, 2006, along with the issue of whether petitioner could pay the as-yet unpaid $100 special assessment fee.

The Court reconvened in a continued sentencing hearing on July 26, 2006, finally sustaining petitioner's counsel's objection on the application of 2K2.1(b)(5) that could have raised petitioner's base offense status level by four points. The Government then argued that it would not recommend reducing petitioner's status level by the proposed three points because petitioner still had not paid the then-delinquent $100 special assessment fee and thus was in violation of the plea agreement. Additionally, because the petitioner's statement to the Court that day substantially changed his prior version of his relevant conduct regarding the gun transaction, the Government further argued that petitioner had not accepted responsibility for his actions and thus was not entitled to have points taken off for such acceptance. Petitioner was then sentenced to 57 months imprisonment, three months less than the statutory maximum 60 month term.

On July 31, 2007, petitioner's counsel submitted a brief pursuant to **Anders v.**

*California*, 386 U.S. 738 (1967) to the United States Court of Appeals for the Fourth Circuit, appealing the adequacy of the Fed. R. Crim. P. 11 hearing conducted by the District Court, the Court's refusal to grant petitioner a downward adjustment in his offense level, and the reasonableness of his sentence.

Petitioner also submitted his own *pro se* supplemental brief appealing claims of ineffective assistance of counsel, government misconduct, and the sufficiency of his Rule 11 hearing. The Court of Appeals affirmed the District Court's decision on all issues except for the ineffective assistance of counsel claim, noting that such claims are best suited for a § 2255 motion.

On January 15, 2008, petitioner filed a petition for writ of certiorari with the United States Supreme Court, and on May 12, 2008, the petition for writ of certiorari was denied.

Subsequently, petitioner filed his § 2255 Motion to Vacate in which he asserts two grounds: (1) that his counsel was ineffective and (2) that his sentence was improper because it was founded on an improper base offense guideline calculation. The petitioner also states a third ground in his Memorandum of Law in Support of his § 2255 Motion to Vacate contending that he is "innocent" of the habitual offender status.

III.    Applicable Law

    **A.    Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that

4

the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C. § 2255.  A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." **Sutton v. United States of America**, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006).

### B. Procedurally Barred Claims

Before evaluating the merits of petitioner's claims, the Court must determine which of petitioner's issues he may bring in his § 2255 motion and which are procedurally barred. It is well settled non-constitutional issues that could have been raised on direct appeal but were not may *not* be raised in a collateral attack such as a § 2255 motion. (emphasis added); **Sunal v. Large**, 332 U.S. 174, 178-79 (1947); **Bousley v. United States**, 523 U.S. 614 (1998).  Constitutional errors that were capable of being raised on direct appeal but were not may be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. (emphasis added); **United States v. Maybeck**, 23 F.3d 888, 891 (4th Cir. 1994).  In establishing "prejudice," the petitioner must show the error worked to his "actual and substantial disadvantage," rather than merely created a possibility of prejudice.  See **Satcher v. Pruett**, 126 F.3d 561, 572 (4th Cir. 1997); quoting **Murray v. Carrier**, 477 U.S. 478, 494 (1986).

In the alternative to establishing "cause" and "prejudice," the petitioner may demonstrate "actual innocence," or that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." **Bousley v. United States**,

5

523 U.S. 614, 621 (1998). In such an event, the court should issue a writ of habeas corpus to prevent a "miscarriage of justice," regardless of whether the issue was procedurally defaulted. *Hurdle v. United States*, 2007 U.S. Dist. LEXIS 37709, at *6-7 (E.D. Va. May 22, 2007) (relying on *Schlup v. Delo*, 513 U.S. 298 (1995)). Finally, issues previously rejected on direct appeal may not be raised in a collateral attack. *Boeckenhaupt v. United States*, 537 F.2d 1182 (4th Cir. 1976).

IV.   Discussion

This Court will address the petitioner's three grounds and objections in turn.

**1.**   As to the first ground, in which the petitioner claims ineffective assistance of counsel for counsel's alleged failure to object to the base offense level used to calculate the applicable sentencing guideline, the petitioner's arguments are misplaced.

Although the petitioner signed a plea agreement waiving his right to bring a § 2255 action, it has been held that claims of ineffective assistance of counsel occurring after the plea agreement has been signed are still permitted to be brought before the District Court. As to any ineffective assistance of counsel claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. *United States v. Attar*, 38 F.3d 727, 732-33 (4th Cir. 1994). Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of

6

appeal rights.

Claims of ineffective assistance of counsel are measured under a two-part analysis outlined in **Strickland v. Washington**, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential." And the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 689-90.

Second, the petitioner must demonstrate he was prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. **Fields v. Att'y. Gen. of Maryland**, 956 F.2d 1290, 1297 (4th Cir.), *cert. denied*, 506 U.S. 885 (1992).

Petitioner's IAC claim is based upon his contention that his attorney failed to object to a miscalculated base offense level which gave him a longer sentence than he otherwise would have received.

"The failure of counsel to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel." **United States v. Breckenridge**, 93 F.3d 132, 136 (4th Cir. 1996).

7

At his July 24, 2006, sentencing hearing, petitioner's counsel allowed petitioner to address the Court *pro se* and voice his objection to the calculation of the base offense level giving rise to his sentence, but the Court did not rule in his favor. Therefore, petitioner's *pro se* objection was heard and decided by the Court, albeit in an adverse manner to petitioner. Petitioner's counsel's performance, in permitting petitioner to voice his objections to the Court, was well within the standard of reasonableness. Furthermore, petitioner's counsel himself then presented vigorous argument to the Court over the course of the July 20, 2006, hearing on his *pro se* Motion to Withdraw his plea agreement as well as the two days of continued sentencing hearings, on complex legal issues directly affecting several objections, ultimately prevailing on two of those, most significantly, the application of U.S.S.G 2K2.1(b)(5) to petitioner's base offense level status, sparing the petitioner a four-point enhancement, an issue so complex that the Court noted it was one of first impression, and "as confusing as one I have seen in the application of the Sentencing Guidelines to the fact[s]," such that "- - you kind of feel like you're back in law school. I've read it once, I've read it twice, and I am still not sure." See Doc. No. 470, p. 26.

Finally, petitioner's counsel demonstrated zealous advocacy in persuading petitioner to withdraw his *pro se* Motion to Withdraw Plea of Guilty, as it would have exposed him to being sentenced as an armed career criminal with a potential term of life imprisonment rather than the 60-month maximum he was facing under the plea agreement. Even the AUSA commented to the Court that petitioner's potential life sentence had been bargained away "as a result of his attorney's advocacy," Doc. No. 470, p. 28, and that petitioner "has

already made one terrible mistake that his lawyer bailed him out of." Doc. No. 470, p. 20. Petitioner cannot establish actual prejudice from the decision because the 57-month sentence he received is well within the statutory maximum of 60 months imprisonment. Furthermore, on appeal, the 4th Circuit also found that, despite petitioner's claim that he had only a "minor role" in the offense, petitioner's base offense level calculation was accurate and his sentence was presumptively reasonable, especially given petitioner's "very serious" involvement in the offense at issue. The petitioner essentially seeks to have it both ways.

Accordingly, petitioner can show neither that his counsel's performance failed to meet the standard of reasonableness nor that he was prejudiced by any error his counsel made, and thus petitioner has failed meet both the first and second prong of the **Strickland** analysis. Therefore petitioner has no valid claim for ineffective assistance of counsel. His claim is not supported by the facts, has no substance and must be dismissed.

**2.**     As to the petitioner's second ground, in which he argues an alleged miscalculation of his base offense level, the petitioner's arguments are barred. This issue was previously decided on direct appeal to the Fourth Circuit Court of Appeals. The Fourth Circuit examined the prisoner's sentence, including the base offense level he was assigned and rejected this claim. Therefore, the petitioner may not now recast it under the guise of a collateral attack. See **Boeckenhaupt v. United States**, 537 F.2d 1182 (4th Cir. 1976).

**3.**     The petitioner's third, and final, argument in which he claims innocence of his habitual offender status likewise has no merit and should be dismissed. This Court notes that had the petitioner been charged with Count 10 of the Indictment, he could have been sentenced

under 924(e) as an armed career criminal based on his prior history of convictions. However, because the petitioner plead guilty only to Count 6, he avoided that outcome. Accordingly, because the petitioner was never actually found to be a habitual offender, his third claim has no merit.

V.     Conclusion

Therefore, upon careful review of the R & R, it is the opinion of this Court that the magistrate judge's **Report and Recommendation [Crim. Doc. 585; Civ. Doc. 6]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report. Further, the petitioner's Objections **[Crim. Doc. 594]** are **OVERRULED**. Accordingly, the petitioner's § 2255 petition **[Crim. Doc. 555; Civ. Doc. 1]** is hereby **DENIED**, and this matter is **ORDERED STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein and to mail a copy to the *pro se* petitioner.

**DATED:** August 26, 2009.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE